NUMBER 
13-02-415-CV


COURT OF 
APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - 
EDINBURG 


DAIMLERCHRYSLER CORPORATION 
(F/K/A CHRYSLER CORPORATION), 

CHRYSLER CORPORATION AND 
CHRYSLER,
Appellants,
v.
BILL L. INMAN, DAVID CASTRO AND 

JOHN WILKINS, EACH INDIVIDUALLY 

AND ON BEHALF OF ALL OTHERS 

SIMILARLY SITUATED, 

Appellees.

On appeal from County 
Court at Law No. 3 of Nueces County, Texas.


O P I N I O N


Before Justices 
Yañez, Castillo and 
Garza


Opinion by Justice Garza


DaimlerChrysler Corporation has filed and 
argued an interlocutory appeal with this Court challenging the trial court's 
certification of two nationwide classes for purposes of suing DaimlerChrysler on 
claims arising out of its design, manufacture, marketing, and sale of 
automobiles equipped with defective seatbelts. On appeal, DaimlerChrysler argues that the 
certification orders must be reversed. We reverse and remand.
Background 
The 
plaintiffs are owners of DaimlerChrysler automobiles equipped with Gen-3 
seatbelt buckles, which they allege suffer from a design defect that renders 
them unreasonably dangerous and unfit for use in automobile passenger restraint 
systems. The plaintiffs claim that DaimlerChrysler knew or should have known 
about this defect but did nothing to cure it. 
None of the plaintiffs has suffered physical 
injury. None has flown through a windshield or slammed into a dashboard on 
account of the Gen-3's failure. Similarly, none alleges that the Gen-3 has 
caused any external property damage. The two certified classes specifically 
exclude all plaintiffs who have suffered physical injury or property damage 
caused by the Gen-3. The classes are limited to owners whose losses are solely 
economic. The precise definitions of the classes are quoted 
below. (1) 

I. Standing to 
Sue
Our jurisdiction over an interlocutory appeal of a 
class certification order is statutorily conferred. See Tex. Civ. Prac. 
& Rem. Code Ann. § 51.014(a)(3) (Vernon Supp. 2003). In its first issue, 
DaimlerChrysler argues that none of the class representatives or class members 
has standing to bring any of the claims alleged in the class petition. Standing 
to sue is a justiciability concern. Perry v. Del Rio, 66 S.W.3d 239, 
249 (Tex. 2001). A challenge to standing implicates the 
boundaries of constitutionally legitimate judicial action and, if successful, ultimately compels dismissal for 
lack of jurisdiction. See, e.g., Tex. Ass'n of Bus. v. Tex. 
Air Control Bd., 852 S.W.2d 440, 
443-46 (Tex. 1993). Standing to sue is a prerequisite to class certification and 
is properly raised on an interlocutory appeal of a class certification order. 
See M.D. Anderson Cancer Ctr. v. 
Novak, 52 S.W.3d 704, 705-06 (Tex. 2001). If the named plaintiffs lack 
individual standing we will dismiss the entire suit for lack of jurisdiction. 
See id. at 711. If the named plaintiffs demonstrate individual 
standing, whether those plaintiffs will then be permitted to represent the 
classes depends on whether rule 42's requirements are satisfied. See 
id. With these considerations in mind, we begin by determining whether our 
jurisdiction extends to the subject matter of this case. See Douglas v. 
Delp, 987 S.W.2d 879, 882 (Tex. 1999) ("Without subject matter 
jurisdiction, courts may not address the merits of a case."). 

Standing focuses on the question of who may bring an 
action. Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 
2000). The United States Supreme Court has explained that "[i]n essence, the 
question of standing is whether the litigant is entitled to have the court 
decide the merits of the dispute or of particular issues." Warth v. 
Seldin, 422 U.S. 490, 498 (1975). 
(2) A long-established line of Texas Supreme Court 
precedent explains and applies the requirement of standing to sue in Texas 
courts. 
(3) Several United States Supreme Court decisions have also influenced 
Texas jurisprudence on standing to sue, see, e.g., Tex. 
Ass'n of Bus., 852 S.W.2d at 444 (deferring to "the more extensive federal 
jurisprudential experience of the federal courts" on the subject of standing), 
but such influence is not a matter of federal preemption. Perry, 66 
S.W.3d at 249 ("The United States Supreme Court has said that 'state courts are 
not bound to adhere to federal standing requirements'") (quoting ASARCO, 
Inc. v. Kadish, 490 U.S. 605, 617 (1989) (noting that the constraints of 
Article III of the U.S. Constitution do not apply to state courts)). Such 
deference exists by exclusive decree of the Texas Supreme Court. 
See id. Notwithstanding Texas' respect for the federal 
courts' "more extensive jurisprudential experience" on the issue of standing, 
see, e.g., Tex. Ass'n of Bus., 852 S.W.2d at 444, 
some commentators have described the rules of federal standing as a "recent 
phenomenon." See, e.g., Cass R. Sunstein, What's Standing 
After Lujan? Of Citizen Suits, "Injuries," and Article 
III, 91 Mich. L. Rev. 163, 169 (1992). 
(4) Thus, at times, the Texas Supreme Court has declined 
to apply federal precedent, relying instead on Texas jurisprudence to decide 
issues of standing. See, e.g., W. Orange-Cove Consol. 
Indep. Sch. Dist. v. Alanis, 107 S.W.3d 558, 583-84 (Tex. 2003) ("The 
dissent does not explain why any difference between Texas law and federal law 
[on standing] is reason enough for us not to follow our own recent precedent."). 
Accordingly, in evaluating the arguments before us, we review the requirements 
of standing as explained by the Texas Supreme Court, but we also pay deference 
to the United States Supreme Court by using its precedent to the extent that the 
Texas Supreme Court has declared it harmonious with our state's law. 
See, e.g., Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 
2001) (looking "to the similar federal standing requirements for guidance"). 
(5) 
In Texas, standing rests on two 
constitutional foundations: (1) the open courts provision and (2) the separation 
of powers clause. See Todd, 53 
S.W.3d at 302; Tex. Ass'n of Bus., 852 S.W.2d at 443. Both sections are 
quoted in the margin. 
(6) The open courts provision directly imposes a 
requirement of standing by granting the right to sue in Texas courts only to 
those litigants suffering an injury. Tex. Ass'n of Bus., 852 S.W.2d at 
444. The separation of powers doctrine, 
in contrast, indirectly imposes a standing requirement by prohibiting Texas 
courts from issuing advisory opinions, which is a proper function of the 
executive branch. See id.; Patterson v. Planned Parenthood, 
971 S.W.2d 439, 442-43 (Tex. 1998) (citing cases). Because an opinion 
rendered in a case brought by a party without standing would be only advisory, 
Texas courts interpret the separation of powers doctrine as barring such cases. 
See Tex. Ass'n of Bus., 852 S.W.2d at 444. As the Texas Supreme Court 
has explained:
The distinctive 
feature of an advisory opinion is that it decides an abstract question of law 
without binding the parties. An opinion issued in a case brought by a party 
without standing is advisory because rather than remedying an actual or imminent 
harm, the judgment addresses only a hypothetical injury. Texas courts, like 
federal courts, have no jurisdiction to render such opinions.
Id. (internal citations omitted). 
Consistent with these constitutional underpinnings, 
standing to sue can be predicated upon either statutory or common-law authority. 
See, e.g., Williams v. Huff, 52 S.W.3d 171,178-79 
(Tex. 2001). These two sources of standing, however, invoke different legal 
standards. See id. Unsurprisingly, common-law rules apply except where 
standing is statutorily conferred, in which case, the statute granting such 
authority and the case law interpreting it serve as the proper framework of 
analysis. See, e.g., Hunt v. Bass, 664 S.W.2d 323, 
324 (Tex. 1984) ("[The] general rule of standing is applied in all cases absent 
a statutory exception to the contrary."). Examples of cases appear in a footnote 
below. 
(7) The 
determination of standing thus requires that we first decide whether any 
statutory authority exists for the individual claims asserted by the plaintiffs. 
Cf. Huff, 52 S.W.3d at 178 (noting that the general rule 
applies unless statutory authority for standing exists); Tex. Dep't of 
Protective & Regulatory Servs. v. Sherry, 46 S.W.3d 857, 861-62 (Tex. 
2001) (deciding a challenge to standing under the provisions of the family code 
rather than using common-law rules); Bland Indep. Sch. Dist. v. Blue, 
34 S.W.3d 547, 555-56 (Tex. 2000) (explaining that a plaintiff's standing is 
determined by reference to common-law rules where no statute otherwise confers 
standing). 
In this case, the named plaintiffs have alleged 
numerous causes of action against DaimlerChrysler based on the following 
theories: negligence, negligent misrepresentation, violations of the Texas 
Deceptive Trade Practices Act ("DTPA"), 
(8) breach of express 
warranty, 
(9) breach of the implied warranty of fitness for a 
particular purpose, 
(10) and breach of the implied warranty of 
merchantability. 
(11) Claims of negligence and negligent misrepresentation 
sound in the common-law of torts. See Fed. Land Bank Ass'n v. 
Sloane, 825 S.W.2d 439, 442 (Tex. 1991) (declaring that damages for 
negligent misrepresentation can be recovered to the extent provided by section 
552B of the Restatement (Second) of Torts); Nobility Homes of Tex., Inc. v. 
Shivers, 557 S.W.2d 77, 78 (Tex. 1977) (declaring that economic loss can be 
recovered under common law negligence). In contrast, claims based on Uniform 
Commercial Code ("UCC") warranties and DTPA violations are statutorily codified 
in the Texas Business and Commerce Code. Accordingly, we apply common-law rules 
for standing to the named plaintiffs' tort claims but look to the Texas Business 
and Commerce Code in deciding whether the plaintiffs have standing to bring 
claims based on DTPA violations and UCC warranties. See, e.g., 
Brown v. Bank of Galveston, 930 S.W.2d. 140, 143 (Tex. App.-Houston 
[14th Dist.] 1996) (determining whether plaintiff had standing to bring 
DTPA claim by applying relevant DTPA provisions and interpretative case law), 
aff'd on other grounds by Brown v. Bank of Galveston, 963 S.W.2d 511, 
512 (Tex. 1998). 
Before 
proceeding to the merits of our respective jurisdictional inquiries, we note 
that for purposes of standing, as with other challenges to jurisdiction, we take 
the plaintiffs' allegations as true. See Cantu v. Perales, 97 
S.W.3d 861, 862 (Tex. App.--Corpus Christi 2003, no pet. h.); Mission 
Consol. Indep. Sch. Dist. v. Flores, 39 S.W.3d 674, 676 (Tex. App.--Corpus 
Christi 2001, no pet.). 
(12) We consider evidence and review the substance of 
their legal claims only to the extent necessary to determine whether 
subject-matter jurisdiction over their case exists in Texas courts. See 
Bland Indep. Sch. Dist., 34 S.W.3d at 555 ("The court should, of 
course, confine itself to the evidence relevant to the jurisdictional issue."); 
see also County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002) 
("In deciding a plea to the jurisdiction, a court may not weigh the claims' 
merits but must consider only the plaintiffs' pleadings and the evidence 
pertinent to the jurisdictional inquiry."). As the Texas Supreme Court explained 
recently:
[B]ecause a court must not act without 
determining that it has subject-matter jurisdiction to do so, it should hear 
evidence as necessary to determine the issue before proceeding with the case. 
But [this] . . . does not authorize an inquiry so far into the substance of the 
claims presented that plaintiffs are required to put on their case simply to 
establish jurisdiction. Whether a determination of subject-matter jurisdiction 
can be made in a preliminary hearing or should await a fuller development of the 
merits of the case must be left largely to the trial court's sound exercise of 
discretion.
Bland Indep. 
Sch. Dist., 34 S.W.3d at 555.
A. Standing to Sue for Negligence and 
Negligent Misrepresentation
Standing to sue 
on the common-law claims of negligence and negligent misrepresentation must be 
determined by common-law rules. We turn to those principles now. Some of the 
most recent Texas Supreme Court cases on standing ask whether the plaintiff is 
"personally aggrieved." See Nootsie, Ltd. v. Williamson County 
Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has standing 
when it is personally aggrieved."); see also M.D. Anderson Cancer 
Ctr., 52 S.W.3d at 707-08 (holding that plaintiff's "lack of any actual or 
threatened injury prevents him from being 'personally aggrieved' such that he 
has any personal stake in the litigation"); Coastal Liquids Transp., L.P. v. 
Harris County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001) (noting, in a 
case involving the issue of capacity and not standing, that "a plaintiff has 
standing when it is personally aggrieved"). 
Whether a plaintiff is "personally 
aggrieved," in turn, depends on whether he or she meets the "general test" for 
standing. See, e.g., Nootsie, 925 S.W.2d at 662. The 
"general test" asks if "there is (a) a real controversy between the parties, 
which (b) will be actually determined by the judicial declaration sought." 
Id.; see also Cornyn v. Andrews, 10 S.W.3d 663, 669 
(Tex. 1999). 
(13) Whether a 
plaintiff is "personally aggrieved" also depends on whether he or she has 
alleged an injury. See, e.g., M.D. Anderson 
Cancer, 52 S.W.3d at 707-08. For instance, in M.D. 
Anderson, the Texas Supreme Court concluded that a plaintiff who had not 
alleged an injury did not have standing to sue for a judicial declaration that 
the defendant committed fraud. See id. The supreme court held that the 
plaintiff was not "personally aggrieved" because he was never actually 
defrauded. Id. In keeping with this principle, the "general test" for 
standing has been articulated in a three-pronged fashion, listing the injury 
requirement as a separate and distinct element. Cf. Tex. Ass'n of Bus., 
852 S.W.2d at 444 ("Standing is implicit in the open courts provision which 
contemplates access to the courts only for those litigants suffering an 
injury."). As the Texas Supreme Court recently declared, "under Texas law, 
standing limits subject matter jurisdiction to cases involving [1] a distinct 
injury to the plaintiff and [2] a real controversy between the parties, [3] 
which . . .will be actually determined by the judicial declaration sought." 
Todd, 53 S.W.3d at 305 (citations omitted). 
Nevertheless, the Texas Supreme Court has 
also used another approach to common-law standing. Some recent decisions have 
asked whether the plaintiff has demonstrated a "personal stake" in the 
controversy. See, e.g., In the Interest of B.I.V., 
923 S.W.2d 573, 574 (Tex. 1996) ("To establish standing, a person must show a 
personal stake in the controversy."). 
(14) Most such opinions have applied a "general rule" of 
standing, which questions whether the plaintiff has alleged some interest 
peculiar to it individually and not as a member of the general public. 
See, e.g., Hunt, 664 S.W.2d at 324. 
(15) But just as the injury requirement of the open 
courts' provision penetrated the "general test" for standing, see 
Tex. Ass'n of Bus., 852 S.W.2d at 444, creating the three-pronged 
approach enumerated above, see Todd, 53 S.W.3d at 305, the 
injury requirement has also overcome the "general rule" of standing. 
See, e.g., Blum v. Lanier, 997 S.W.2d 259, 
261 (Tex. 1999) (noting that the plaintiff must allege that the defendant's 
actions have caused him some special injury). Accordingly, the supreme court has 
recently announced the "general rule" thus: "[T]o have standing . . . a 
plaintiff must demonstrate that he or she possesses an interest in a conflict 
distinct from that of the general public, such that the defendant's actions have 
caused the plaintiff some particular injury." Huff, 52 S.W.3d at 178. 
This formulation emphasizes not only the need for injury but also causation. 
Accord Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 
("There must be a causal connection between the injury and the conduct 
complained of."). 
The continuing viability of both the 
"general test" and "general rule" evidenced by these Texas Supreme Court cases 
forces us to decide which measure of standing should apply to the named 
plaintiffs. The supreme court has used the "general test" for standing mostly 
(if not exclusively) in the context of declaratory judgment actions. 
See Todd, 53 S.W.3d at 305 (applying "general test" to city 
councilman who claimed that mayor usurped his authority); Proctor 
v. Andrews, 972 S.W.2d 729, 734 (Tex. 1998) (applying "general test" to 
city that claimed statute impermissibly delegated legislative 
authority); Nootsie, 925 S.W.2d at 661-62 (applying 
"general test" to appraisal district that challenged the constitutionality of a 
statute it was charged with enforcing); Tex. Workers' Comp. Comm'n v. 
Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995) (applying "general test" to 
challenge regarding the constitutionality of statute); Tex. Ass'n of 
Bus., 852 S.W.2d at 444 (applying "general test" to plaintiff association 
challenging a statute's constitutionality); see also Barshop v. 
Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 626 
(Tex. 1996) (following Garcia's analysis on plaintiff's challenge to 
constitutionality of statute). 
In contrast, the 
Texas Supreme Court has used the "general rule" of standing in a greater variety 
of situations, including declaratory judgment actions, see Todd, 53 
S.W.3d at 302-03 (applying "general rule" of standing to voter asserting a claim 
for declaratory judgment against the mayor to protect the results of a city 
referendum), but mainly in cases brought by taxpayers, residents and other 
miscellaneous would-be litigants challenging the action or inaction of 
governmental and quasi-governmental bodies and officials. See Bland 
Indep. Sch. Dist., 34 S.W.3d at 555-56 (applying "general rule" of standing 
to suit brought by taxpayers to enjoin school district from making payments to 
third party pursuant to an allegedly illegal lease-purchase finance agreement); 
Blum, 997 S.W.2d at 261 (applying the "general rule" to decide whether 
a qualified voter who signs a petition that initiates an election has standing 
to seek an injunction against the ballot proposition drafted by the city); 
Hunt, 664 S.W.2d at 324 (applying the "general rule" to a group of 
citizens who sought a writ of mandamus because lawsuits in which they appeared 
as plaintiffs were delayed for more than four years by the failure of the county 
commissioner's court to provide adequate courtroom space and personnel); 
Scott v. Bd. of Adjustment, 405 S.W.2d 55, 56 (Tex. 1966) (applying the 
"general rule" to taxpayers who brought a suit against the city and board of 
adjustment to restrain the maintenance of a large hotel sign authorized by the 
board as a variance under the city zoning ordinance). M.D. Anderson 
appears to be one of the most recent Texas Supreme Court cases on standing to 
address a common-law tort claim, but it did so only in the context of an action 
seeking a declaratory judgment that the defendant's conduct amounted to fraud. 
M.D. Anderson, 52 S.W.3d at 706-08. Thus, it gives only limited 
direction regarding the proper test to determine standing to sue on common-law 
claims. 
The named plaintiffs in this case present claims that 
are conspicuously different than those of other plaintiffs whose standing has 
been examined in prior opinions of the Texas Supreme Court. They assert claims 
as consumers, not as taxpayers, residents, or voters; their claims are against a 
business entity, not a governmental or quasi-governmental body or a public 
official; and they seek a monetary award for economic damages, not a declaratory 
judgment or injunctive relief. In short, DaimlerChrysler's challenge to standing 
does not fit within the holding of any decision ever rendered by the Texas 
Supreme Court. Consequently, we cannot use such precedent as authority in this 
case for choosing one standing formulation and then applying it without regard 
to the other. Instead, we will compare the substance of both formulations to 
determine their essential constitutional principles and then apply those 
principles to the named plaintiffs. 
(16) The injury requirement of the open courts' provision 
is an irreducible constitutional minimum for standing. See Tex. Ass'n of 
Bus., 852 S.W.2d at 444. But cf. Huff, 52 S.W.3d at 179 (noting 
exception that taxpayers can enjoin the illegal expenditure of public funds and 
need not demonstrate a particularized injury). Irrespective of whether standing 
is determined by reference to the "general test" or "general rule," the 
plaintiff must allege a distinct injury. See Tex. Ass'n of Bus., 852 
S.W.2d at 444. Accordingly, the Texas Supreme Court has rearticulated both 
standards to reflect the universal applicability of the injury requirement. 
See Todd, 53 S.W.3d at 305 ("general test" with injury 
requirement); Huff, 52 S.W.3d at 178 ("general rule" with injury 
requirement). 
Essentially, the "general rule" and "general 
test" differ in that they do not take the same approach to ensuring enforcement 
of the constitutional prohibition against judicial advisory opinions. 
Specifically, the "general rule" requires that any alleged injury be causally 
connected to the defendant's conduct, whereas the "general test" demands that 
the plaintiff claim relief capable of redressing its injury. Compare 
Huff, 52 S.W.3d at 178 (General rule - "[The] defendant's actions 
[must] have caused the plaintiff some particular injury."), with 
Bd. of Water Engr's, 283 S.W.2d at 724 (General test - "[T]he judicial 
declaration sought would determine the controversy because it would decide 
whether or not the Board could enforce the statute."). We refer to these 
requirements as "causation" 
(17) and "redressability." 
(18) Because they both weed out cases that would otherwise 
lead to impermissible judicial advisory opinions, we conclude that they are each 
distinct constitutional demands for standing and are, as such, applicable in all 
cases. Accord Allen v. Wright, 468 U.S. 737, 751 (1984) ("The 
injury must be "fairly" traceable to the challenged action, and relief from the 
injury must be "likely" to follow from a favorable decision."). 
(19) 
Thus, we conclude that in the absence of 
statutory authority, the constitutional minimum for standing requires that the 
plaintiff demonstrate a (1) distinct injury (2) caused by the defendant's 
actions, which (3) can be redressed by the relief requested. See 
MET-Rx USA, Inc. v. Shipman, 62 S.W.3d 807, 810 (Tex. App.--Waco 2001, 
pet. denied); accord Raines v. Byrd, 521 U.S. 811, 818 (1997) 
("To meet the standing requirements of Article III, '[a] plaintiff must allege 
personal injury fairly traceable to the defendant's allegedly unlawful conduct 
and likely to be redressed by the requested relief.'") (quoting Allen v. 
Wright, 468 U.S. 737, 751 (1984)). 

DaimlerChrysler contends that the named 
plaintiffs do not have standing to sue in Texas courts because none claims to 
have suffered personal injury, property damage, or any legally cognizable 
economic loss. It argues that the alleged 'tendency' of a vehicle or one of its 
component parts to fail does not present an actual, legally compensable injury 
in fact. According to DaimlerChrysler, "The [plaintiffs'] specious 'costs of 
repair' theory improperly replaces legal injury with a method of calculating 
damages that are only recoverable if the claimant has sustained a legal injury." 
Furthermore, their negligence and negligent misrepresentation claims are not 
legally cognizable because those claims require an independent injury, not an 
economic loss to the subject of a contract. Finally, DaimlerChrysler argues that 
because the plaintiffs have alleged no manifest injury, and have suffered no 
legally cognizable damages, they lack standing to sue and the trial court's 
class certification order should be reversed.
We construe DaimlerChrysler's position as 
advancing two primary lines of argument: (1) there is no injury; and (2) if 
there is an injury, it is not legally redressable. We examine these arguments in 
turn, deciding the issue of injury first. Accord Association of Data 
Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 151 (1970) ("The first 
question is whether the plaintiff alleges that the challenged action has caused 
him injury in fact, economic or otherwise."). 
1. Injury
In 
their live petition, the class representatives allege that they own automobiles 
designed, manufactured, and sold by DaimlerChrysler that were represented as not 
only satisfying but exceeding all applicable governmental and industry safety 
standards and regulations. Contrary to these representations, the plaintiffs 
claim that each of their automobiles actually came equipped with seatbelts whose 
reliability miserably fails the minimum level tolerated by both the federal 
government and the automobile industry at large. They allege that their 
seatbelts are subject to accidental release at any time, especially during 
collisions, and that they are thus rendered unreasonably dangerous and unfit for 
the ordinary use of restraining passengers. Because the alleged defect owes not 
to the manufacture but to the design of the buckle (specifically, a design 
incapable of reducing accidental release rates to a reasonable level), all Gen-3 
buckles suffer from the same defect and all automobiles in which they are 
equipped are likewise unreasonably dangerous. In short, the injury alleged by 
each plaintiff is the absence of a working passenger restraint system in his or 
her DaimlerChrysler automobile. 
But that is only part of the wrong alleged 
in this case and consequently, only part of the injury. According to the 
plaintiffs, DaimlerChrysler knew about this defect or should have known about 
it, and instead of warning automobile owners about the problem and discontinuing 
installation of the Gen-3 buckles or offering to repair or replace those already 
in use, DaimlerChrysler deceived and victimized the class members by 
disseminating print and broadcast advertisements extolling the safety virtues of 
its automobiles, representations which were false. Meanwhile, DaimlerChrysler 
continued manufacturing, distributing, and selling automobiles equipped with 
Gen-3 buckles. On this basis, the plaintiffs assert tort claims for the lost 
value of their automobiles, losses which they claim can be measured by the cost 
of installing new, non-defective seatbelts. They also claim relief for lost 
vehicle use during the time required to complete such replacement. 
We turn to the case precedent on injury. The 
Texas Supreme Court's decisions have always required a plaintiff to allege some 
injury distinct from that sustained by the public at large. Todd, 53 
S.W.3d at 302 (denying voter's standing because injury alleged was not unique to 
plaintiff). The Texas Supreme Court has also instructed that "we may look to the 
similar federal standing requirements for guidance." See, 
e.g., id. at 305. The United States Supreme Court has 
"consistently stressed that a plaintiff's complaint must establish that he has a 
'personal stake' in the alleged dispute" and that the injury suffered must be 
"concrete and particularized." Id. (quoting Raines, 521 U.S. 
at 819 (citing Lujan, 504 U.S. at 560-61)). 
(20) 
In Brown v. Todd, the Texas Supreme 
Court adopted the approach of Raines v. Byrd. See id. It 
decided the issue of standing by looking for a "sufficiently particularized, 
personal injury to afford" the plaintiff standing. See id. In the 
instant case, the named plaintiffs have alleged injuries that are particularized 
to themselves individually as car owners, and they assert claims on behalf of 
themselves. They have thus satisfied the injury standards announced in 
Todd. We conclude that the plaintiffs have alleged more than a 
"generalized grievance" because they have demonstrated a "personal stake in the 
outcome" of this controversy. Accord Baker v. Carr, 369 U.S. 106, 204 
(1967). 
We also conclude that the named plaintiffs 
have demonstrated an interest in a conflict distinct from that of the general 
public such that the defendant's actions have caused them some particular 
injury. Although members of the general public undeniably enjoy a common 
interest in safe transportation, the named plaintiffs, as owners of automobiles 
with allegedly defective seatbelts, have successfully demonstrated an interest 
distinct from that of the general public. Their interest concerns 
DaimlerChrysler's actions in designing, manufacturing, marketing, and selling 
automobiles equipped with dangerously defective seatbelts. Their injury is thus 
highly particularized and distinct. 
Nevertheless, DaimlerChrysler cites M.D. 
Anderson and urges a similar result in this case. See M.D. 
Anderson, 52 S.W.3d at 707-11 (dismissing for lack of standing) (citing 
DeSantis v. Wackenhut, 793 S.W.2d 670, 688 (Tex. 1990) (holding that 
common law fraud requires a showing that the plaintiff suffered injury)). In 
M.D. Anderson, the Texas Supreme Court concluded that a plaintiff who 
was not allegedly defrauded by the defendant could not sue for a declaratory 
judgment that the defendant's conduct amounted to fraud. See id at 
707-08. In dismissing the plaintiff's claim for lack of standing, the Texas 
Supreme Court noted that common law fraud requires an injury and declared that 
even if the plaintiff was the intended victim of a completed fraud, he lacked 
standing because he was not actually defrauded. See id. 
DaimlerChrysler contends that M.D. 
Anderson requires a similar result here: dismissal of the plaintiffs' 
claims for lack of standing because common law claims of negligence and 
negligent misrepresentation require an independent injury, not an economic loss 
to the subject of a contract. Apparently, DaimlerChrysler takes M.D. 
Anderson's reference to DeSantis as judicial authorization to 
investigate and decide the core factual allegations underlying a plaintiff's 
claim before trial and before completion of discovery under the guise of a 
jurisdictional challenge. We do not interpret M.D. Anderson's holding 
to be so invasive.
As noted above, M.D. Anderson 
involved a declaratory judgment, not an actual claim for fraud. See id. 
at 706. In deciding the case, the Texas Supreme Court concluded 
that the plaintiff's "lack of any actual or threatened injury prevents 
him from being 'personally aggrieved' such that he has any personal stake in the 
litigation." Id. at 707-08. (emphasis added). This 
language is noteworthy because it demonstrates that the Texas Supreme Court used 
the "general test" for standing and not the elements of common-law fraud to 
determine standing. In other words, M.D. Anderson did not hold that the 
elements of common-law fraud are the same as the elements of standing to sue. It 
concluded that the plaintiff's "lack of any actual or threatened 
injury" was dispositive. See id. (emphasis added). If this 
conclusion had referred to the elements of common-law fraud rather than the 
requirements of standing, as DaimlerChrysler's arguments imply (if not declare), 
its logical extension would be that a "threatened injury" would suffice for 
recovery on a fraud claim. But the Texas Supreme Court has expressly held that 
fraud requires an actual injury. See generally Stone v. Lawyers 
Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977) (enumerating the elements 
of common-law fraud). In fact, M.D. Anderson cites an opinion affirming 
that very proposition. See M.D. Anderson, 52 S.W.3d at 707 (citing 
DeSantis, 793 S.W.2d at 688). 
(21) Thus, we do not read M.D. Anderson as an 
invitation to address the legal and factual merits of a case in the guise of 
deciding a challenge to subject matter jurisdiction. 
Because we conclude that the named 
plaintiffs have alleged an actual injury, we reject DaimlerChrysler's position 
to the extent it argues that M.D. Anderson compels reversal. Whether 
the named plaintiffs succeed in establishing a sufficient injury to recover on their common-law tort claims is a merits 
issue, of course, and it awaits further development. See generally 
Dante B. Gatmaytan, The Illusion of Intergenerational Equity: Oposa v. 
Factoran as Pyrrhic Victory, 15 Geo. Int'l Envtl. L. Rev. 457, 469 
(2003).
DaimlerChrysler also argues that the alleged 
'tendency' of a vehicle or one of its component parts to fail does not present an actual "injury in fact." 
Under federal law, standing requires "that the plaintiff have suffered an 
'injury in fact'--an invasion of a judicially cognizable interest which is (a) 
concrete and particularized and (b) actual or imminent, not conjectural or 
hypothetical." Bennett v. Spear, 520 U.S. 154, 167 (1997). To be 
"judicially cognizable," the injured interest must be one that is "legally 
protected." See Lujan, 504 U.S. at 560. There must be a legally 
guaranteed right not to be injured in the fashion alleged by the plaintiff. 
See Anthony Clark Arend and Catherine B. Lotrionte, Congress Goes 
to Court: The Past, Present, and Future of Legislator Standing, 25 Harv. J. 
L. & Pub. Pol'y 209, 216 (2001). Moreover, the injury must be real and 
specific. See id. 
DaimlerChrysler's argument is essentially 
that the allegations of the named plaintiffs' complaint fail to meet the second 
component of the injury-in-fact requirement because they do not demonstrate an 
"actual" injury. See, e.g., Spear, 520 U.S. at 167. 
According to the named plaintiffs, however, their injury is "not conjectural or 
hypothetical" because it was manifest on the day each of them purchased a 
DaimlerChrysler automobile. An imminent injury suffices for standing. See, 
e.g., M.D. Anderson, 52 S.W.3d at 707-708 (searching plaintiffs' 
pleadings for any actual or threatened injury to confer the plaintiff 
with standing). We therefore overrule DaimlerChrysler's risk-of-injury 
argument.
In doing so, we note that the plaintiffs 
have alleged more than an imminent injury. "Risk of injury" is an inaccurate 
characterization of the harm alleged in this case. Each plaintiff claims an 
actual injury in the form of insufficient product value. According to the 
plaintiffs, DaimlerChrysler represented that the Gen-3 buckles were up to snuff, 
both by government standards and by those of the industry. They also claim that 
those representations were false and that DaimlerChrysler knew or should have 
known of their falsity. On the basis of these allegations, each plaintiff claims 
a concrete and particularized injury in fact sufficient to confer standing to 
sue. 
For its 
part, DaimlerChrysler urges us to conclude that a product's tendency to 
malfunction, even a strong propensity to do so, cannot itself be a defect or an 
injury in fact in the absence of an actual malfunction. We will not answer this 
argument because it addresses the merits of the plaintiffs' case; it is not a 
threshold argument against standing. That is, the precise standard of 
defectiveness is a liability issue. Whether defectiveness turns on a mere 
probability of unlatching or is dependent on a number of manifested, 
unintentional unlatchings is not a question of standing. It can be answered only 
by applying binding Texas precedent to the facts before the trial court, facts 
which have yet to be developed in this case. 
Before moving on, however, we will say this much: 
automobile safety belts present special reliability concerns. They are used for 
the emergency protection of human life, and unfortunately, an ordinary passenger 
has no way of knowing whether his or her seatbelt will actually perform until an 
unexpected moment of impact, when an unforeseeable collision forces reliance on 
the seatbelt's emergency protection. Wearing a seatbelt may bolster an 
expectation that it will perform in a time of need, but as the named plaintiffs 
argue, such use may also imbue a dangerously defective product with a false and 
misleading appearance of reliability. We see no requirement for an actual, 
failed emergency use of a seatbelt as a prerequisite for a suit based on alleged 
design defect. 
Finally, DaimlerChrysler claims that there is no harm 
here because the named plaintiffs do not allege any out-of-pocket loss on 
account of their Gen-3 buckles. None of the plaintiffs claims to have repaired 
or replaced an allegedly defective buckle. According to DaimlerChrysler, they 
have thus suffered no loss. We disagree. A plaintiff need not expend additional 
money to sue for an economic loss arising from a sale involving harmful 
commercial misrepresentations. A plaintiff only needs to spend money once on a 
dangerously defective product to sue for its value, and the purchase of the good 
itself counts. In this case, the plaintiffs claim to have been duped on the 
safety and thus the value of their cars. Economic loss has already occurred, and 
each plaintiff alleges such loss. That is their injury in fact. 
We hold that the plaintiffs have standing because 
they each have suffered a direct, concrete and particularized injury, which is 
actual and real. It is manifest and highly distinct. It is also accompanied by a 
present risk of horrendous injury and death, but the alleged injury itself 
(defective seatbelts) is not conjectural or hypothetical. It is genuine and 
palpable. It is personal to them individually and is not shared by the public at 
large. It more than suffices to establish standing to sue in Texas courts. 

2. Causation
DaimlerChrysler does not dispute causation, but 
because it is a constitutional element of standing, we will address it. 
See, e.g., Huff, 52 S.W.3d at 178 ("[The] defendant's 
actions [must] have caused the plaintiff some particular injury."). Federal 
jurisprudence asks whether the plaintiff's alleged injury is "fairly traceable" 
to the defendant's conduct. See, e.g., Allen, 468 
U.S. at 757 ("Respondents' second claim of injury cannot support standing 
because the injury alleged is not fairly traceable to the Government conduct 
respondents challenge as unlawful."). Texas precedent is in accord. 
See, e.g., Huff, 52 S.W.3d at 178. In this case, the 
named plaintiffs allege that DaimlerChrysler designed, manufactured, marketed, 
and distributed automobiles equipped with defective seatbelts. These defective 
seatbelts are the source of the named plaintiffs' injuries. That causal 
connection suffices. 
3. Redressability
The final 
element for standing is whether the relief requested by the plaintiff will 
redress the alleged injury. See, e.g., Todd, 53 
S.W.3d at 305. 
(22) The Texas Supreme Court has described the element of 
redressability as asking whether the requested remedy, if granted, would end the 
controversy. See, e.g., Cornyn, 10 S.W.3d at 669. In 
this case, the named plaintiffs have requested a monetary award for their 
economic damages. In City of Tyler v. Likes, 962 S.W.2d 489 (Tex. 
1997), the Texas Supreme Court concluded that monetary damages measured by the 
economic loss would be "an adequate and appropriate remedy for negligent harm to 
real or personal property." Id. at 496-97. The supreme court reasoned 
that "while few persons suffering serious bodily injury would feel made whole by 
the mere recovery of medical expenses and lost wages, many whose property has 
been damaged or destroyed will be entirely satisfied by recovery of its value." 
Id. We conclude that a monetary award measured by the plaintiffs' 
economic loss would end the controversy because it would fully compensate the 
named plaintiffs. 
In sum, the 
named plaintiffs have satisfied the three fundamental constitutional 
requirements for standing to sue in Texas courts: injury, causation, and 
redressability. They have alleged a distinct injury caused by the defendant's 
unlawful conduct, and they have requested relief that, if granted, would end the 
controversy. We conclude that they are each personally aggrieved by 
DaimlerChrysler's conduct such that they have a personal stake in the outcome of 
this controversy. Furthermore, their concrete adverseness to the defendant's 
conduct sufficiently assures us that these are indeed the right parties to 
litigate these issues. We conclude that a judicial opinion in this case would 
not be advisory but would bind the parties and decide their dispute, either for 
DaimlerChrysler or for the named plaintiffs. Thus, we 
hold that the named plaintiffs have standing to sue on their common-law tort 
claims. 
B. Standing to Sue as Consumers under the 
Texas Deceptive Trade Practices Act
The named plaintiffs also have asserted 
claims against DaimlerChrysler for DTPA violations. To have standing to sue, 
DTPA plaintiffs must qualify as "consumers." Flenniken v. Longview Bank 
& Trust Co., 661 S.W.2d 705, 706 (Tex. 1983); see also 
Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995) 
("Faircloth's lack of consumer status disposes of this issue."); cf. Crown 
Life Ins. Co. v. Casteel, 22 S.W.3d 378, 386-87 (Tex. 2000) ("[Plaintiff's] 
Article 21.21 claims for violations of [the] DTPA . . . require consumer status.").
The 
DTPA defines a "consumer" as "an individual . . . who seeks or acquires by 
purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 
17.45(4) (Vernon 2002). DTPA consumer status requires that: (1) the plaintiffs 
must have sought or acquired goods or services by purchase or lease; and (2) the 
goods or services purchased or leased must form the basis of the complaint. 
Sherman Simon Enters., Inc. v. Lorac Serv. Corp., 724 S.W.2d 13, 15 
(Tex. 1987). The Texas Supreme Court has explained that a "plaintiff establishes 
standing to sue under the DTPA in terms of her relationship to a transaction." 
Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 368 (Tex. 
1987); see also Flenniken v. Longview Bank & Trust 
Co., 661 S.W.2d 705, 707 (Tex. 1983) ("A plaintiff establishes 
her standing as a consumer in terms of her relationship 
to a transaction, not by a contractual relationship with the defendant"). 

In this case, the named plaintiffs acquired 
goods by purchase; they bought DaimlerChrysler automobiles. Their automobiles 
now form the basis of their complaint against DaimlerChrysler. Accordingly, we 
conclude that they have met the requirements for standing contemplated by the 
DTPA and its interpretative case law. 
Nevertheless, DaimlerChrysler argues that 
the named plaintiffs have not demonstrated their standing because they have not 
identified any pecuniary loss. No Texas Supreme Court precedent is cited for 
this proposition, and to our knowledge, none exists. We therefore decline to 
adopt DaimlerChrysler's position. 
(23) The issue of DTPA standing asks whether the 
plaintiff is a consumer. We conclude that the named plaintiffs have demonstrated 
such status. 
C. Standing to Sue as 
Buyers under the Uniform Commercial Code
The named plaintiffs have also claimed 
relief for breach of UCC warranties, which arise under sections 2-313 (express), 
2-314 (implied), and 2-315 (fitness) of the UCC.
See Tex. Bus. & Com. Code Ann. §§ 
2.313-2.315 (Vernon 1994). Again, DaimlerChrysler 

has advanced several arguments against 
allowing the plaintiffs to pursue these claims. 
Before getting to them, however, we will first review the requirements for 
standing to sue on UCC warranty claims. 
Notably, the Texas Supreme Court has never 
decided a plaintiff's standing to sue for breach of warranty under the Texas 
version of the UCC. Cf. 3M v. Nishika Ltd., 953 S.W.2d 733, 737 (Tex. 
1997) (deciding such a challenge under Minnesota law, which held that "those who 
purchase, use, or otherwise acquire warranted goods have standing to sue [under Article 2] for purely economic 
losses"). To our knowledge, only two intermediate Texas courts of appeal have 
addressed the issue, and in both cases, the courts applied the common-law rules 
already discussed in this opinion. See MET-Rx USA, 62 S.W.3d 
at 810-12; Hi-Lo Auto Supply, L.P. v. Beresky, 986 S.W.2d 382, 386 
(Tex. App.--Beaumont 1999, no pet.). In Hi-Lo Auto Supply, the Beaumont 
Court held that the plaintiff had standing to sue a hardware store for breach of 
warranty and other claims because he had alleged a "direct injury" and had thus 
established that there was "real controversy." See Hi-Lo Auto 
Supply, 986 S.W.2d at 386. The terms "direct injury" and "real controversy" 
refer, of course, to the common-law rules for standing (a.k.a. the "general 
test"; a.k.a. the "general rule"), which the named plaintiffs have already met. 

In the other case, MET-Rx USA, Inc. v. 
Shipman, the Waco Court concluded that the plaintiff lacked standing to sue 
for breach of warranties because the relief he requested, a declaratory judgment 
and injunctive relief, would not redress his injury, which arose from his 
discontinued use of the defendant's defective medication. MET-Rx USA, 
Inc., 62 S.W.3d at 810-12. Importantly, MET-Rx USA was a 
declaratory judgment action, and its utility as a source of guidance for UCC 
standing is consequently limited. We already have concluded that the 
redressability element of standing to sue in this case is satisfied because a 
monetary award will completely redress the plaintiffs' injuries. MET-Rx 
USA presents no additional hurdles for UCC standing. 
Even so, we understand that the UCC does not 
confer blanket authority to sue for breach of warranty. See Tex. Bus. 
& Com. Code Ann. § 2.714 (Vernon 1994). Under section 2-714, only a "buyer" 
may sue to recover economic damages for non-conformities of tender, including 
breaches of warranties. Id. Article 2 defines a "buyer" as a "person 
who buys or contracts to buy goods." Tex. Bus. & Com. Code Ann. § 
2.103(a)(1) (Vernon Supp. 2003). In this case, the named plaintiffs purport to 
be "buyers" of DaimlerChrysler's automobiles, an assertion which DaimlerChrysler 
has not disputed. They also allege that DaimlerChrysler's automobiles failed to 
conform to both express and implied warranties. On that basis, the plaintiffs 
claim standing to sue as buyers under the UCC. We agree, but DaimlerChrysler 
does not. 
It 
argues that the named plaintiffs lack standing to sue on their implied warranty 
claims because they have not sustained any legally cognizable damages. According 
to DaimlerChrysler, "A plaintiff's claim for repair costs, like those asserted 
here, in the absence of a malfunction that has caused an injury to the 
plaintiff, the plaintiff's property or the product itself, cannot support any 
cause of action under any legal theory." Thus, it would seem that to have 
standing to sue for a breach of warranty, a buyer must suffer an actual 
"malfunction that has caused an injury." 
But that adds a new and distinct element to the 
requirements for standing to sue: an actual malfunction. DaimlerChrysler cites 
no Texas case law directly supporting this proposition. As a mere intermediate 
court of appeals, we have no authority to redefine and narrow our state's 
subject-matter jurisdiction in such a manner. Even if it were up to us, we would 
not do so because such a restriction would unjustifiably impair the ability of 
private parties to judicially enforce the terms of product quality embodied in 
their sales agreements.
The UCC facilitates the freedom of 
contract. See Tex. Bus. & Com. Code Ann. 
§1.102(b)(2) (Vernon 1994) ("Underlying purposes and polices of . . . [the UCC] 
are to permit the continued expansion of commercial practices through custom, 
usage, and agreement of the parties."). To this end, Article 2 of the UCC, which 
covers the sale of goods, permits parties to set their own terms of performance. 
See generally id. at § 1.102(c) ("The effect of provisions of this 
title may be varied by agreement, except as otherwise provided in this title 
terms."). Specifically, it allows parties to agree on a level of product quality 
below which a buyer will have recourse for breach of warranty. See generally 
id. at § 2.313. The UCC also allows the parties to disclaim all warranties. 
See Tex. Bus. & Com. Code Ann. § 2.316 (Vernon 1994); 
Southwestern Bell Tel. Co. v. FDP Corp., 811 S.W.2d 572, 577 (Tex. 
1991) ("[T]he UCC creates an implied warranty of merchantability, and it also 
allows sellers to disclaim the warranty"). Thus, breach-of-warranty claims come 
in many varieties. In some instances, a successful claimant may allege no 
product malfunction at all, relying instead on the inferior quality of the goods 
to prove breach of warranty. See, e.g., Microsoft Corp. v. 
Manning, 914 S.W.2d 602, 608-09 (Tex. App.--Texarkana 1995, writ dism'd) 
(allowing breach of warranty claims involving software that destroyed data only 
in some cases). As the United States Supreme Court has explained: 
A warranty claim . . . means simply that the 
product has not met the customer's expectations, or, in other words, that the 
customer has received "insufficient product value." See J. White & R. 
Summers, Uniform Commercial Code 406 (2d ed. 1980). The maintenance of product 
value and quality is precisely the purpose of express and implied warranties. 

E. River S.S. Corp. v. Transamerica Delaval, 
476 U.S. 858, 872 (1986) (footnotes and citations omitted). Other buyers, in 
contrast, will suffer personal injury or property damage caused by a 
malfunctioning good. See, e.g., Bridgestone/Firestone, 
Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994) (allowing plaintiff to 
sue for defectively manufactured seatbelts under the UCC). 
If 
we were to restrict the subject-matter jurisdiction of Texas courts to only 
cases involving malfunctioning goods, as DaimlerChrysler requests, we would 
unjustly curtail the freedom of contractual determination bestowed upon parties 
by the Texas legislature. Doing so would also eliminate causes of action 
explicitly codified in the Texas Business and Commerce Code. We have no Texas 
authority for doing so, and we are unconvinced that any contrary federal 
precedent on this issue warrants such action, as no independent federal law of 
sales exists. Cf. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938) 
("Congress has no power to declare substantive rules of common law applicable in 
a State whether they be . . . commercial law or a part of the law of torts. And 
no clause in the Constitution purports to confer such a power upon the federal 
courts.").
Although DaimlerChrysler cites federal cases 
interpreting state laws, such as the UCC, those cases have applied federal and 
not state rules of standing. See, e.g., In re Air Bag 
Prods. Liab. Litig., 7 F. Supp.2d 792, 806 (E.D. LA 1998) (deciding issue 
of standing to sue for Texas breach-of-warranty claims in federal court and 
making no reference to Texas precedent on standing to sue). In those cases, the 
courts determined whether they, as federal courts, had subject-matter 
jurisdiction. See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 
318 (5th Cir. 2002); Garcia v. Gen. Motors Corp., Civil No. B-98-155 
(S.D. Tex. Mar. 22, 2002) (slip opinion). We are not bound by such decisions, 
see e.g., Perry, 66 S.W.3d at 249 ("The United States 
Supreme Court has said that 'state courts are not bound to adhere to federal 
standing requirements'"), and because these particular challenges to standing 
regard state law claims, we follow state precedent in resolving them. In 
passing, however, we note that DaimlerChrysler also cites several federal cases 
that do not actually involve any challenges to standing. See In re 
Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 288 F.3d 1012, 1015 
(7th Cir. 2002) (basing its decision to reverse class certification not on 
standing but on choice-of-law concerns); In re Air Bag Prods. Liab. 
Litig., 7 F. Supp. 2d at 795 (deciding case that involved no challenge to 
standing); Lee v. GMC, 950 F. Supp. 170, 171 (S.D. Miss. 1996) 
(memorandum opinion) (same); Martin v. Ford Motor Co., 914 F. Supp. 
1449, 1451 (S.D. Tex. 1996) (same); Feinstein v. Firestone Tire & Rubber 
Co., 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (memorandum opinion) (denying 
class certification, without mentioning the doctrine of standing, because the 
predominance of common issues was defeated). Such opinions are ill-suited 
authority for jurisdictional challenges and we will not manipulate their 
holdings to fit the much narrower threshold issue of standing to sue. As we have 
already concluded, defective seatbelts are an injury sufficient to confer 
standing to sue in Texas courts. 
In its remaining arguments, DaimlerChrysler 
claims that it has not actually breached any implied or express warranties and 
that the plaintiffs' claims are an insufficient basis for imposing liability 
against it. Although such contentions undoubtedly raise valid concerns from 
DaimlerChrysler's perspective, this appeal of the class certification orders is 
simply not the proper juncture for DaimlerChrysler to make its defense on the 
merits. We are not deciding the issue of liability today. We are deciding 
whether the named plaintiffs are entitled to litigate the issue of liability. 
Nevertheless, each of DaimlerChrysler's remaining arguments attacks the merits 
of the named plaintiffs' UCC warranty claims. Each implicates issues on which 
the parties have taken diametrically opposed positions. DaimlerChrysler does not 
use these arguments to challenge whether the named plaintiffs are the right 
parties to litigate the claims at issue, which is the essential question of 
standing. Instead, it claims that the plaintiffs lack standing because they 
cannot ultimately succeed on their causes of action. 
(24) 
Such 
arguments lead to a gap in the case law. The Texas Supreme Court has never 
driven the doctrine of standing as far into the substance of a plaintiff's claim 
as DaimlerChrysler now urges. Cf. Bland Indep. Sch. Dist., 34 S.W.3d at 
554 ("[Standing] does not authorize an inquiry so far into the substance of the 
claims presented that plaintiffs are required to put on their case simply to 
establish jurisdiction."). Although the jurisprudential void between such 
merits-based arguments for dismissal and the Texas Supreme Court's actual 
precedent on the issue of standing to sue could be bridged by narrowing the 
subject-matter jurisdiction of Texas courts, effectively forcing would-be 
plaintiffs to prove the essentials of their case before any trial court has 
authority to hear the merits of their claims, we lack authority and decline to 
do so.
Texas courts have always had subject-matter 
jurisdiction over cases in which defendants are entitled to judgment as a matter 
of law, as DaimlerChrysler now claims to be. See, 
e.g., Temple-Inland Prods. Corp. v. Carter, 993 
S.W.2d 88, 95 (Tex. 1999) (affirming take-nothing judgment against plaintiffs). 
It has never been questioned or doubted that courts properly exercise 
jurisdiction in such cases by rendering judgment for the defendant and not by 
dismissing for lack of jurisdiction. See id. Thus, it is unsurprising 
that virtually none of the Texas authority relied on by DaimlerChrysler actually 
involves the issue of standing to sue. See, e.g., Muñoz v. 
Gulf Oil Co., 732 S.W.2d 62, 65 (Tex. App.--Houston [14th Dist.] 1987, writ 
ref'd n.r.e.) (affirming an award of summary judgment for the defendant without 
discussing standing on the grounds that "[t]he uncontroverted evidence 
establishes as a matter of law that both products, propane and ethyl mercaptan, 
were fit for ordinary purposes and complied with all warranties"). Instead, the 
defendant argues lack of standing based on cases in which the exercise of 
subject-matter jurisdiction was never even challenged and where standing was not 
discussed. We understand why. No authority exists for denying all but winning 
parties access to Texas courts. 
We hold that the named plaintiffs have 
standing to sue on all causes of action asserted in their class petition. 
II. Choice of Law
To maintain a 
class action in Texas, rule 42 requires that plaintiffs meet each of the 
requirements of 42(a) and at least one of the requirements under 42(b). Tex. R. 
Civ. P 42(a), (b); Union Pac. Res. Group v. Hankins, 2003 Tex. LEXIS 
112, *9-10, 46 Tex. Sup. J. 973 (Tex. 2003). As the Texas Supreme Court said in 
Bernal, "actual, not presumed, conformance with [the rule] remains . . 
. indispensable." Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 435 
(Tex. 2000). Compliance with rule 42 must be demonstrated; it cannot merely be 
presumed. Henry Schein v. Stromboe, 102 S.W.3d 675, 691 (Tex. 2002). 


Here, the trial court found that the named 
plaintiffs had demonstrated compliance with all four of the initial requirements 
of 42(a), including (1) numerosity; that "the class is so numerous that joinder 
of all members is impracticable"; (2) commonality; that "there are questions of 
law or fact common to the class"; (3) typicality; that "the claims or defenses 
of the representative parties are typical of the claims or defenses of the 
class"; and (4) adequacy of representation; that "the representative parties 
will fairly and adequately protect the interests of the class." See 
Tex. R. Civ. P. 42(a). The court also held that they met rule 42 (b)(4) 
(predominance of common questions). See Tex. R. Civ. P. 
42(b).
The trial court performed no choice-of-law 
analysis regarding class claims originating outside Texas based on the following 
reasoning:
A class 
certification order need not address choice of law. This is especially true in 
this case which has been pending for nearly two years and still no party has met 
even the threshold burdens to apply another jurisdiction's law by (1) 
demonstrating a true conflict in laws based on conflicting governmental 
interests, (2) proving the material differences between various competing 
jurisdiction's substantive law, and (3) proving the competing jurisdiction's 
relevant contacts. In the absence of a proper choice of law motion, the Court 
will continue to presume, as it is entitled to presume, that the law of other 
jurisdictions is the same as Texas. 

DaimlerChrysler argues that the trial court 
improperly burdened it with the duty of demonstrating potential variations in 
state law. DaimlerChrysler contends that the plaintiffs bear the burden of 
demonstrating the absence of conflicting state laws because it is the named 
plaintiffs' burden under rule 42(b)(4) to show that common questions of law 
predominate in order for class certification to be proper. We agree. 
In Henry Schein, an appeal decided 
after the instant class certifications were ordered, the Texas Supreme Court 
reversed the certification of a nationwide class action on choice-of-law 
grounds. See Henry Schein, 102 S.W.3d at 697. It concluded 
that the plaintiffs had "wholly failed to demonstrate that Texas law should 
apply to so many of . . . [the class] claims that common legal issues 
predominate." Id. In doing so, it impliedly overruled the proposition 
that "a class certification order need not address choice of law [issues]." It 
also placed the burden of establishing the appropriate law on representatives of 
nationwide classes who argue for certification by virtue of predominance. 
See, e.g., Synder v. Magna, 94 S.W.3d 215, 240 (Tex. 
App.-Corpus Christi 2002, pet. filed). Certification in this case was based on 
predominance, and we conclude that Henry Schein therefore compels 
reversal. 
Because the trial court still has 
significant pre-certification work to do on choice-of-law issues, we will not 
prospectively evaluate its compliance with rule 42 outside that context. On 
remand, the trial court may reach the conclusion that Texas law should apply 
because it is not in conflict with the rest of the nation, but it shall not do 
so on the same presumptive basis as before. 
Conclusion
DaimlerChrysler's remaining issues are 
OVERRULED. We REVERSE AND REMAND this case for further proceedings consistent 
with this opinion. All motions pending before this Court regarding this appeal 
are OVERRULED.
________________________
DORI CONTRERAS GARZA, 
Justice 

Opinion delivered and filed the
the 20th day of November, 2003. 

[1] The first class consists 
of:
All United States resident persons 
(except residents of California or Nevada) who own or lease new vehicles, model 
year 1993-2002, 
manufactured and/or sold by Daimler/Chrysler and equipped with Gen-3 seat belt buckles . . . 
[excluding] any person who has an action for damages for personal injury or 
death or property damage against Defendants. 
The second class consists of: 

All United States resident persons 
(except residents of California or Nevada) who own or lease used vehicles, model 
year 1993-2002, 
manufactured and/or sold by Daimler/Chrysler and equipped with Gen-3 seat belt buckles . . . 
[excluding] any person who has an action for damages for personal injury or 
death or property damage against Defendants. 


[2] See generally Myriam E. Gilles, Representational Standing: 
U.S. ex rel. Stevens and the Future of Public Law 
Litigation, 89 
Calif. L. 
Rev. 315, 
316-17 (2001) 
("Standing is a 
doctrine of justiciability. . . . [It] concentrates on the status of the 
litigants rather than the issues in dispute, and asks whether an individual 
plaintiff has a sufficient stake in the outcome of a matter to justify his right 
to litigate the issue in federal court.") (internal footnotes omitted) 
(citing Flast v. 
Cohen, 392 U.S. 
83, 99-100 (1968) 
(finding that "when 
standing is placed in issue in a case, the question is whether the person whose 
standing is challenged is a proper party to request an adjudication of a 
particular issue and not whether the issue itself is justiciable")).

[3]See Hunt v. Bass, 664 S.W.2d 323, 
324 (Tex. 1984); Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976); Bd. of Water 
Eng’rs v. City of San Antonio, 283 S.W.2d 722, 724-25 (Tex. 1955); Mitchell v. 
Dixon, 168 S.W.2d 654, 656 (Tex. 1943); Yett v. Cook, 281 S.W. 837, 841 (Tex. 
1926); Harding v. Comm’rs’ Court of McLennan County, 66 S.W. 44, 45 (Tex. 1902); 
City of San Antonio v. Stumburg, 7 S.W. 754, 755-56 (Tex. 1888). 

[4] Compare Cass R. Sunstein, 
What's Standing 
After Lujan? Of Citizen Suits, "Injuries," 
and Article III, 91 Mich. L. Rev. 163, 169 (1992) (footnotes 
omitted) ("The explosion of judicial interest in standing as a distinct body of 
constitutional law is an extraordinarily recent phenomenon."), Robert V. Percival and Joanna B. 
Goger, Citizen 
Suits and the Future of Standing in the 21st Century: From Lujan to Laidlaw and Beyond: Escaping the Common 
Law's Shadow: 
Standing in 
the Light 
of Laidlaw, 12 
Duke Envtl L & 
Pol'y F. 119, 121 (2001) ("Standing to sue is a fairly recent 
concept in American jurisprudence, as several scholars have noted. 'Standing,' which is not mentioned in the 
Constitution, was not discussed in the context of Article III's 'case or controversy' requirement until 1944, and it was 
not until the 1970s that standing doctrine became widely used in the federal 
courts.") (footnotes 
omitted) and William A. Fletcher, The Structure of 
Standing, 98 
Yale L.J. 221, 224-25 (1988) ("It is at least clear that current 
standing law is a relatively recent creation. In the late nineteenth and early 
twentieth centuries . . . no general doctrine of standing existed. Nor, indeed, 
was the term 'standing' used as the doctrinal heading 
under which a person's 
right to sue was determined.") (footnotes omitted), with Ex parte 
Sterling, 122 
S.W.2d 294, 296 (Tex. 1932) (dealing with standing), Home Inv. Co. v. 
Strange, 109 S.W. 
849, 852 (Tex. 1919) (same), Gilmore v. 
Waples, 188 S.W. 
1037, 1041 (Tex. 1916) (same), Lindsey v. 
Terrell, 101 S.W. 
1073, 1074 (Tex. 1907) (same), Chicago, R. I. & T. R. Co. 
v. Halsell, 83 
S.W. 15, 15 (Tex. 1904) (same), Giddings v. 
Fischer, 77 S.W. 
209, 211 (Tex. 1903) (same); Whitmire v. May, 72 S.W. 375, 376 (Tex. 1903) 
(same), and Colquitt-Tigner Min. Co. v. 
Rogan, 68 S.W. 
154, 155 (Tex. 1902) (same). 

[5] Although federal jurisprudence on 
standing may be more extensively developed, even if not older, than that of 
Texas, discontent regarding its "incoherence" has been well-documented by legal 
scholars. See, e.g., Fletcher, supra, at 221 ("It has been described as 
'permeated with 
sophistry,' as 
'a word game played by 
secret rules,' and more 
recently as a largely meaningless 'litany' recited before 'the Court . . . chooses up sides 
and decides the case.'"). 

[6] The open courts provision reads, 
"All courts shall be 
open, and every person for an injury done him, in his lands, goods, person or 
reputation, shall have remedy by due course of law." Tex. Const. art. 1, § 13. The separation of powers 
clause declares:

The powers of the Government of the 
State of Texas shall be divided into three distinct departments, each of which 
shall be confided to a separate body of magistracy, to wit: Those which are 
Legislative to one; those which are Executive to another, and those which are 
Judicial to another; and no person, or collection of persons, being of one of 
these departments, shall exercise any power properly attached to either of the 
others, except in the instances herein expressly permitted.
Tex. Const. art. 2, § 1.

[7]For a sample of cases employing 
common-law rules of standing see: Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 
547, 556 (Tex. 2000) (taxpayer standing to sue school district to enjoin future 
payments under contract with third party); Nootsie, Ltd. v. Williamson County 
Appraisal Dist., 925 S.W.2d 659, 661-62 (Tex. 1996) (standing to challenge 
constitutionality of statute); Barshop v. Medina County Underground Water 
Conservation Dist., 925 S.W.2d 618, 626 (Tex. 1996) (standing to challenge 
constitutionality of statute); Tex. Workers’ Compensation Comm’n v. Garcia, 893 
S.W.2d 504, 517-18 (Tex. 1995) (standing to challenge constitutionality of 
statute); Osborne v. Keith, 177 S.W.2d 198, 200 (Tex. 1944) (taxpayer standing). 
For some cases interpreting statutory grants of standing see: Tex. Dep’t of 
Protective & Regulatory Servs. v. Sherry, 46 S.W.3d 857, 861-62 (Tex. 2001) 
(standing to sue under Texas Family Code); Crown Life Ins. Co. v. Casteel, 22 
S.W.3d 378, 384-85 (Tex. 2000) (standing to sue under Texas Insurance Code); NME 
Hosps., Inc. v. Rennels, 994 S.W.2d 142, 147 (Tex. 1999) (standing to sue under 
Texas Labor Code); Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 146-48 (Tex. 
1994) (standing to sue under Texas Insurance Code); Scott v. Bd. of Adjustment, 
405 S.W.2d 55, 57 (Tex. 1966) (statute granting standing to any taxpayer); 
Estate of Teal, 2002 Tex. App. LEXIS 2294, *15-17 (Tex. App.—Corpus Christi 
2002, no pet.) (standing to sue under Texas Probate Code) Pittsburgh Corning 
Corp. v. Walters, 1 S.W.3d 759, 766-68 (Tex. App.—Corpus Christi 1999, pet. 
denied) (standing to sue under Texas Civil Practice and Remedies Code as 
survivor for wrongful death); In re Marriage of Morales, 968 S.W.2d 508, 511-12 
(Tex. App.—Corpus Christi 1998, no pet.) (standing to sue under Texas Family 
Code).
[8] Tex. Bus. & Com. Code 
Ann. §17.50 (Vernon Supp. 
2002).

[9] Tex. Bus. & Com. Code Ann. 
§ 2.313 (Vernon Supp. 1994).
[10] Tex. Bus. & Com. Code Ann. 
§ 2.315 (Vernon Supp. 1994). 

[11] Tex. Bus. & Com. Code Ann. 
§ 2.314 (Vernon Supp. 1994). 

[12] See generally Brown v. 
Todd, 53 S.W.3d 
297, 305 n.3 (Tex. 2001) ("Because standing is a component of 
subject matter jurisdiction, we consider . . . standing as we would a plea to 
the jurisdiction, construing the pleadings in favor of the plaintiff.") (citing Warth v. Seldin, 422 U.S. 490, 501 (1975); 
Tex. 
Ass'n of 
Bus., 852 S.W.2d 
at 445); Bland 
Indep. Sch. Dist., 
34 S.W.3d at 554 ("A plea to the jurisdiction is a 
dilatory plea, the purpose of which is to defeat a cause of action without 
regard to whether the claims asserted have merit."). 

[13] The "general test" was first expressly endorsed by 
the Texas Supreme Court in Bd. of Water Engr's v. City of 
San Antonio, 283 
S.W.2d 722, 724 (Tex. 1955). But cf. Garwood Irr. Co. v. 
Lundquist, 252 S.W.2d 759, 761 (Tex. 1952) (evidencing an even earlier 
formulation of the "general test"). In that case, the supreme court held that 
San Antonio had standing to sue the Board of Water Engineers for a declaratory 
judgment regarding the constitutionality of a statutory provision that the Board 
was charged with enforcing. See Bd. of Water Engr's, 
283 S.W.2d at 724. The 
Texas Supreme Court noted that a "real and practical 
controversy" existed 
and that "the judicial 
declaration sought would determine the controversy because it would decide 
whether or not the Board could enforce the statute." See id. 

[14] The United States Supreme Court has 
also discussed standing in terms of a plaintiff's "personal stake." See, e.g., Baker v. Carr, 369 U.S. 186, 204 (1962). In 
Baker v. 
Carr, the Court defined the question of 
standing as whether the plaintiff had alleged "such a personal stake in the outcome of the controversy 
as to assure that concrete adverseness which sharpens the presentation of the 
issues upon which the court so largely depends for illumination of difficult 
constitutional questions." Id. (emphasis added). 
[15] The "general rule" was originally articulated by the 
Texas Supreme Court in an 1888 decision, which explained:
We think it a principle established 
by the overwhelming weight of authority in the courts of all countries subject 
to the common law, that no action lies to restrain an interference with a mere 
public right, at the suit of an individual who has not suffered or is not 
threatened with some damage peculiar to himself. For a special damage resulting 
from the invasion of a right enjoyed by a party in common with the public, the 
law affords him a remedy by private action, but if the damages be only such as 
are common to all, the action must be brought by the lawfully constituted 
guardian or guardians of the public interest.
Stumburg, 7 S.W. at 755. Throughout the twentieth century, 
the Texas Supreme Court continued to employ this precept, refining it into a 
doctrine of standing to sue. See Bland Indep. Sch. 
Dist., 34 S.W.3d 
at 555-56; Blum v. 
Lanier, 997 S.W.2d 
259, 261-62 (Tex. 
1999); Hunt, 664 S.W.2d at 324; Scott, 405 S.W.2d at 56; Mitchell, 168 S.W.2d at 656; Yett, 281 S.W. at 841; Staples v. 
State, 245 S.W. 
639, 642 (Tex. 1922). 

[16] In doing so, we note that the 
"general 
test" and "general rule" have become increasingly 
interrelated and overlapping in recent times. In Nootsie, for instance, the supreme court 
obliquely equated the "general rule" and "general test" by concluding that the plaintiff 
had alleged a "sufficient stake in the controversy 
to assure the presence of an actual controversy that the declaration sought will 
resolve." Nootsie, 925 S.W.2d at 662; see also Proctor v. 
Andrews, 972 
S.W.2d 729, 734 (Tex. 1998). Thus, under Nootsie, a plaintiff who 
meets the "general rule" of having a "sufficient stake" will also satisfy the 
"general test" of being "personally aggrieved." Subsequently, in M.D. Anderson, the Texas Supreme Court explained 
that a plaintiff who is not "personally aggrieved" cannot have a "personal stake" in a controversy. See M.D. Anderson Cancer Ctr. v. 
Novak, 52 S.W.3d 
704, 707-08 (Tex. 
2001). Under M.D. 
Anderson, then, it can be concluded that a plaintiff who fails the "general 
test" of being "personally aggrieved" will also fail the "general rule" of 
having a "personal stake." 

[17] Although the requirement of 
causation appears expressly in the language of the "general rule," see, e.g., Williams v. 
Huff, 52 S.W.3d 
171, 178 (Tex. 2001), it is only implicit, at best, in the "general test," see, e.g., Todd, 53 S.W.3d at 307. 
That is, the determination of whether a "real controversy exists between the 
parties" must, on some 
level, ask whether the defendant is alleged to have caused the 
plaintiff's injury, but 
this is tacitly understood and not expressly stated. 

[18] The "general test's" heritage as a statutory grant of 
authority for declaratory judgment actions apparently influenced its 
articulation of the redressability requirement. See generally Bd. of Water 
Engr's, 283 S.W.2d 
at 724. After all, the 
"general 
test" does not ask 
about the "requested 
relief," as does the 
federal case law. See, e.g., Raines v. Byrd, 521 U.S. 811, 818-19 (1997). The 
general test asks about the "judicial declaration 
sought." See Proctor, 972 S.W.2d at 734. But cf. Cornyn v. 
Andrews, 10 S.W.3d 
663, 669 (Tex. 1999) ("Lubbock and its city officials 
acting in their official capacities do have standing to assert these claims 
because they have alleged concrete injuries and have asked for a remedy that, if granted, would 
end the controversy.") (emphasis added).
[19]After all, if the relief requested 
is not capable of redressing the injury alleged, any resulting judicial opinion 
would be only advisory. See generally Tex. Ass'n of Bus., 852 S.W.2d at 444 (discussing 
advisory opinions). Similarly, if the injury complained of by the plaintiff was 
not allegedly caused by the defendant, then, on the basis of the 
plaintiff's 
allegations, the proper parties would not be before the court and any resulting 
judicial opinion would be advisory and not binding. See id. Because the legislature cannot 
enlarge the jurisdiction of Texas courts to include the subject matter of 
advisory opinions, see id.; accord Linda R.S. v. Richard 
D., 410 U.S. 614, 
617 n.3 (1973) 
("It is, of course, true that Congress 
may not confer jurisdiction on Art. III federal courts to render advisory 
opinions."), 
it is no mere 
prudential concern but a constitutional mandate that courts not issue such 
judgments. But 
cf. Flast v. Cohen, 392 U.S. 83, 100 (1968) 
("The question whether 
a particular person is a proper party to maintain . . . [a particular] action 
does not, by its own force, raise separation of powers problems."). As the Texas Supreme Court noted in 
Texas 
Ass'n of 
Business: 

[W]e have interpreted the Uniform 
Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE §§ 37.001-.011, to be merely a procedural 
device for deciding cases already within a court's jurisdiction rather than a 
legislative enlargement of a court's power, permitting the rendition 
of advisory opinions. Firemen's Ins. Co., 442 S.W.2d at 333; United Serv. Life Ins. Co. v. 
Delaney, 396 
S.W.2d 855, 863 (Tex. 1965); California Prods., Inc. v. 
Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780 
(1960).
Tex. Ass'n of Bus., 852 S.W.2d at 444.

[20] The Unites States Supreme Court has 
explained that "to 
invoke judicial power the claimant must have a 'personal stake in the 
outcome,' or a 
'particular, concrete 
injury,' or a 'direct 
injury;' in short, 
something more than 'generalized grievances.'" U.S. v. 
Richardson, 418 
U.S. 166, 179-180 
(1974) (internal 
citations omitted); see also Linda R.S. v. Richard 
D., 410 U.S. 614, 
617 (1973) 
("[W]e have steadfastly 
adhered to the requirement that, at least in the absence of a statute expressly 
conferring standing, federal plaintiffs must allege some threatened or actual 
injury resulting 
from the putatively illegal action before a federal court may assume 
jurisdiction.") 
(footnote omitted and emphasis added).
[21] In passing, we note that the 
plaintiffs in DeSantis were actually allowed to try their 
fraud claim in a Texas court of law. See DeSantis v. 
Wackenhut, 793 
S.W.2d 670, 688-89 (Tex. 1990). After reviewing the defendant's 
successful motion for a directed verdict on the fraud issue, the Texas Supreme 
Court held, not that the plaintiffs lacked standing to sue, but that they had 
not proved their allegations of fraud as a matter of law. See id. A directed verdict in favor of the 
defendant was affirmed. See id. 

[22] Accord Simon v. E. Kentucky Welfare 
Rights Org., 426 
U.S. 26, 45-46 (1976) 
("The complaint 
suggests no substantial likelihood that victory in this suit would result in 
respondents' receiving 
the hospital treatment they desire."); Warth, 422 U.S. at 505-06 ("But the record is devoid of any 
indication that these projects, or other like projects, would have satisfied 
petitioners' needs at 
prices they could afford, or that, were the court to remove the obstructions 
attributable to respondents, such relief would benefit petitioners."); Linda R. S., 410 U.S. at 618 ("If appellant were granted the 
requested relief, it would result only in the jailing of the child's father. The prospect that 
prosecution, at least in the future, will result in payments of support can, at 
best, be termed only speculative."). 

[23] Even if such a requirement existed 
for DTPA standing, we would conclude, based on the reasoning above, that the 
named plaintiffs have met it. 

[24] As one commentator recently noted 
in the federal context: 
"Standing" and "cause of action" are two different concepts that 
are governed by separate provisions of the Rules of Court. Standing to sue 
revolves around the question of who the proper parties are in a suit. The 
"proper 
party" requirement is 
satisfied if it is alleged that petitioners and intervenors have sustained or 
are in danger of sustaining immediate injury resulting from the acts or measures 
complained of. One who is directly affected by and whose interest is immediate 
and substantial in the controversy has standing to sue. A party must show a 
personal stake in the outcome of the case or an injury to himself that can be 
redressed by a favorable decision, so as to warrant an invocation of the 
court's jurisdiction 
and to justify the exercise of the court's remedial powers on his behalf. . . 
.

In contrast, the Rules of Court 
define a "cause of 
action" as "the act or omission by which a 
party violates a right of another." For a cause of action to exist, 
there must be: (a) a right in favor of the plaintiff, by whatever means and 
under whatever law it arises or is created; (b) an obligation on the part of the 
defendant to respect, or not to violate, such right; and (c) an act or omission 
on the part of said defendant constituting a violation of the plaintiff's right 
or a breach of the defendant's obligation to the plaintiff. 

Dante B. Gatmaytan, The Illusion of 
Intergenerational Equity: Oposa v. Factoran as Pyrrhic Victory, 15 Geo. Int'l Envtl. L. Rev. 457, 469 (2003).